JORGE V. DOMÍNGUEZ ET AL., Plaintiffs and Appellants, *v.* RAFAEL FABIÁN Y FABIÁN, Defendant and Appellee.

No. 3839.  Argued May 7, 1926.—Decided November 29, 1926.

*Jorge V. Domínguez* and *F. Soto Gras* for the appellants.  *Henry G. Molina* for the appellee.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

The plaintiffs in this case, as shareholders of Central Boca Chica, a corporation created and domiciled in the Dominican Republic, brought this action to recover from defendant Rafael Fabián the sum of $65,300 as damages resulting from certain fraudulent or negligent acts alleged to have been committed by the defendant in the performance of his duties as president of the Banco Territorial y Agrícola and vice-president of Central Boca Chica, thus depriving them of the value of their stocks.

The trial court dismissed the complaint and in its opinion summed up the conclusions and findings as follows:

"It is alleged that Fabián was one of the directors and first vice-president of the said Central Boca Chica previous to September 15, 1922, and until October 14 of the same year, and at the same time president of the Banco Territorial y Agrícola of Porto Rico. This bank had acquired as collateral for an agricultural financing loan certain bonds of the Central to the amount of $350,000, issued by the Central Boca Chica. The bank was a trustee representing the bondholders. As neither interest nor the overdue installments of the loan had been paid, the bank brought suit to collect, but the Central defended in the Dominican courts. On the 15th of September, 1922, the president of the company, Miguel Guerra Parra, came to Porto Rico and made an agreement with the bank to settle the differences existing between the bank and the central and also

between the bank and another corporation called the Compañía Industrial y Comercial of Santo Domingo in which Guerra was a partner. In his agreement with the bank Guerra Parra acted both as vice-president of the Compañía Industrial y Comercial and principal shareholder in the Central Boca Chica. In connection with said agreement in a general meeting of shareholders of said Central Boca Chica, held on October 5, 1922, which was, as alleged by plaintiffs, under the absolute control of the defendant and Guerra Parra, it was resolved to discontinue the proceedings brought in the Dominican court in opposition to the legal action to collect prosecuted by the Banco Territorial y Agrícola of Porto Rico. Such agreements were part of a plan of reorganization, and were entered into with the deliberate purpose of protecting the interests of the debtor company and to reorganize its affairs so as to make it solvent. As regards the bank the agreement granted an extension of the loan for 12 years with the former collateral, and the debtor company for its part bound itself not to hinder or delay the suit brought by the bank; and this agreement was to be carried out by Fabián in his dual capacity of president and principal shareholder of the Banco Territorial and vice-president and director of the debtor company representing the Porto Rican shareholders. Plaintiffs allege that Fabián, acting in that capacity, made a promise to Soto Gras to the effect that the bank would not take any definite steps to prejudice the interests of the shareholders of the debtor company, and relying on that promise Soto Gras abandoned a trip to Santo Domingo in behalf of the Porto Rican shareholders whose purpose was to protect their interests in the general meeting, and that expecting that the promise would be kept and in view of the plan of reorganization adopted, the plaintiffs took no steps for the protection of their interests. It is alleged that Fabián, instead of keeping the agreement, combined with other persons to establish, in violation of the agreement and under the laws of the Dominican Republic, a corporation known as Andrés Sugar Company and became one of its directors; that the ostensible purpose of the establishment of that corporation was to carry out the aforesaid agreement for the benefit of the shareholders of Central Boca Chica, but that in reality it only resulted in benefiting the defendant and other persons who thus took advantage of the plan of reorganization, dividing among themselves the property of Central Boca Chica and thus depriving the plaintiffs of their rights therein; that there was nothing at that time to prevent the defendant as director and vice-president of Central Boca Chica from carrying out the terms of the agreement with the bank for the benefit

of all of the shareholders; that neither the Andrés Sugar Company nor the persons who organized it contributed any cash or property for the payment of a part or the whole of the debt to the Banco Territorial y Agrícola; that the action to collect the said debt was simulated, due to the influence and attitude of the defendant as president and principal shareholder thereof, and to the confidence placed in him by the plaintiff shareholders, and also to his influence as vice-president and one of the largest shareholders of Central Boca Chica: that the agreement with the bank was not carried out by Fabián and his partners in several respects, but chiefly in having incorporated the new concern under the laws of the Dominican Republic and not under those of Porto Rico where plaintiffs reside; that Fabián permitted certain shareholders, who were his personal friends, to receive and he himself received, the full amount of their shares from the capital stock of the Central Boca Chica under the guise of certain financial operations secured with the properties and products of Central Boca Chica; that in July, 1921, the assets of said Central amounted to $1,404,055.07, and at the time of the conveyance to Andrés Sugar Company of the properties of Central Boca Chica on the 14th of October, 1922, the net value thereof was $755,491.15 not including debts and obligations, the total value of its stock being $750,000 and therefore the cash value of each share was $100 in American gold. Plaintiffs prayed for a judgment against defendant for the value of their respective shares amounting to $65,000 plus interest thereon.

"Several incidents took place and were fully discussed, and after an answer to the complaint was filed, the case went to trial which lasted until the 27th of February when it was submitted.

"After mature consideration of the documents offered in evidence as well as of the testimony of witnesses, we set down the findings which in our opinion are sufficient for a disposal of this case.

"At the time mentioned in the complaint the Central Boca Chica had not paid its obligations secured by mortgage and otherwise and had paid neither principal nor interest of the mortgage held by the Banco Territorial y Agrícola as trustee, nor the agricultural financing loan advanced by the 'Compañía Industrial y Comercial', to which it owed the sum of $115,890.86 on the 31st of July, 1921. As appears from the annual report of the company, the sugar crop that year brought losses, and in 1922 the business was worse. Negotiations to get a new agricultural financing loan for the 1921–1922 crop were not successful. The Banco Territorial, being unable to collect, sent one of its directors, Walker, to Santo Domingo, in Feb-

ruary, 1922, to investigate the situation and endeavor to find a solution. The bank decided to foreclose the mortgage, but wished to leave the concern in a position to carry on its business. When Soto Gras, one of the plaintiffs in this case, heard of the foreclosure proceedings he went to see Fabián who confirmed the report that the bank had taken proceedings, but that its action would not be prejudicial to the interests of the shareholders and that the bank was not hostile to them. Soto Gras, notwithstanding his gratification after his conference with Fabián, secured from several shareholders of Central Boca Chica and residents of Porto Rico the appointment for himself and MacCormick as their agents or representatives to attend the general meeting of the shareholders of Central Boca Chica to be held on the 10th of June, 1922, in Santo Domingo. On the point of sailing they cabled Guerra Parra to postpone the meeting because the boat would arrive late in Santo Domingo. Guerra Parra, a large shareholder in Central Boca Chica, came to Porto Rico, met Soto Gras and went to Spain to secure from a capitalist, Olegario Riera, another agricultural financing loan for the Central Boca Chica. Riera was one of the partners in the Compañía Industrial y Comercial and Guerra Parra was its president, said company being a creditor of Boca Chica and a shareholder therein. Guerra Parra, as president of the Compañía Industrial y Comercial, claimed certain preferences or liens on the movable property of the central and had levied an attachment on said property dispossessing the Central of some of that property. There is no doubt that the bank was acting in the belief that it was encountering in its legal proceedings the opposition of Central Boca Chica and the Compañía Industrial y Comercial, and that in its understanding or agreement with Guerra Parra it was understood that said Compañía Industrial y Comercial, instead of placing obstacles, would help the bank by discontinuing the legal proceedings. No evidence has been submitted showing that there was a solid ground for the opposition of Central Boca Chica. It appears that its object was only to gain time to secure a loan with which to redeem the bonds and to pay other obligations of the company. There is no evidence tending to show that the mortgage in favor of the bank had any defect or vice invalidating it, and it is to be presumed that the Banco Territorial, in the exercise of its rights and in the performance of its duties as trustee, did the right thing, that is to say, took legal steps to collect. It has not been shown in a detailed and concrete manner what was the plan of reorganization previously agreed, nor the real participation of defendant in that plan. It has been shown that Walker and Martínez Domín-

guez, as special agents of the bank fully authorized, came to a settlement of the business satisfactory to the bank. Substantially, the agreement was that the Compañía Industrial would not oppose the bank; that its partner Riera would grant a loan of $100,000 secured by a first mortgage in the shape of new bonds to be issued in series for Riera, the bank, MacCormick and the Compañía Industrial y Comercial for their respective claims. They would endeavor to secure from other quarters the sum of $50,000 as an agricultural financing loan to keep the central going. That loan was later on increased to $150,000, and it was secured from a corporation known as the Porto Rico Sugar & Developing Co., with the personal guaranty of MacCormick, Walker and Martínez Domínguez. Fabián was the president of the said company and among its shareholders were Behn Bros., Manuel González, Walker and Martínez Domínguez, none of whom was a shareholder of Boca Chica. As an additional guaranty it was agreed to organize a new corporation to be known as the Andrés Sugar Company and to this was allotted the property of Central Boca Chica at a public sale.

"There is no evidence to show that the plaintiffs or other shareholders of Boca Chica had contributed any cash, credit or securities to pay the debts already due and stop the public sale. MacCormick, Walker and Martínez Domínguez obtained, with their personal guaranty as above stated, from the Porto Rico Developing Co. the $150,000 required to enable the Andrés Sugar Co. to work the central which it had acquired at public sale.

"It has not been shown that the insolvency of Central Boca Chica in 1921 and 1922 was due wholly or in part to negligence on the part of the defendant in the performance of his duties as one of the managers of the property, that is, as a member of its board of directors. In the report or general statement of the company describing its operations and affairs from August 1, 1920, to July 31st, 1921, signed by Guerra Parra, Olegario Riera and Jesús Cabián as president, treasurer and secretary respectively, commenting on the adverse condition of the business, the following statement appears under the heading 'Profits and Loss', p. 16: The sugar in stock at the end of the financial year, valued at $314,434.61, has been sold at a lower figure than that specified in the inventory (at the beginning of the present financial year) leaving a loss of $166,726.04 . . . . On page 18 it says: 'Loss for this year (1921) $47,867.79'. From an examination of the balance it appears that the total of the indebtedness amounted to $588,968.42.

"The report mentions as one of the causes for the condition of

affairs the low price of sugar compared with that of the preceding year's and the high wages, and this condition extended to all sugar undertakings.

"It has not been concretely shown what part was taken by Fabián in these transactions and still less that he controlled the meeting of the shareholders in the Central Boca Chica in its resolutions relating to the settlement with the bank. We do not know the number of his shares in the Central Boca Chica, in the Banco Territorial or in the Porto Rico Developing Company. We can not presume from the mere fact that he was a shareholder in those concerns that he controlled or cast a deciding vote, either personally or by proxy, in the different agreements leading to the final transaction. It has not been shown what information Fabián had of the particulars of the transaction, some of which having been carried out while he was in Europe and away from Porto Rico. It has not been shown that he was a shareholder in the new corporation Andrés Sugar Company at the time of its organization and later at the time of the acquisition of the Central. On the contrary, the evidence in this respect is negative. Therefore we can not estimate the profit he derived from the alleged combination, if indeed he received any.

"For the above reasons and as the essential allegations of the complaint have not been proved, it must be dismissed."

Although the appellants assign the commission of several errors by the court below, in reality the issue turns on a question of fact, that is, whether the defendant had had in any way anything to do with the matters imputed to him in the complaint, or, in other words, whether the evidence showed the commission of fraudulent acts or the omission of others in the performance of his duties for all of which they allege that the defendant was liable.

We have considered all of the evidence submitted by appellants, and we agree with the court below that it was not shown that defendant had any participation in the plan of reorganization which resulted in the public sale of the properties of Central Boca Chica in consequence of the foreclosure proceedings instituted by the Banco Territorial and the conveyance of said properties to the Andrés Sugar Company, a new concern incorporated under the laws of

Santo Domingo. Likewise, there is no evidence to prove the positive allegation of the complaint that the defendant was one of the organizers of the corporation Andrés Sugar Company, or that he was a shareholder therein. Nevertheless, the appellants allege that the court below erred in refusing to consider the circumstantial evidence tending to show the moral certainty of the participation of the defendant in the negotiations for the plan or reorganization mentioned by the court below. The mere fact that the defendant was president of the Banco Territorial, a shareholder in Central Boca Chica, the principal of Rafael Martínez Domínguez, and was connected with them in other undertakings, are not facts sufficient of themselves to connect the defendant with the fraudulent acts alleged by the appellants to have been carried out by the said parties and others so as to deprive them of the value of their shares in Central Boca Chica. We do not doubt that fraud may be established by circumstantial evidence, but its existence can never be established by mere inferences, conjectures or suspicions. *Gómez v. Bravo et al.,* 34 P.R.R. 141; *Sabalier v. Iglesias et al.,* 34 P.R.R. 338. From July, 1922, to January, 1923, the defendant was in Spain. On September 15th, 1922, the advisory board voted a resolution which was ratified by the board of directors on September 18th, 1922, establishing the bases to secure the mortgage debt of Central Boca Chica, the collection of which was pending before the courts of the Dominican Republic, such action being opposed by the defendant corporation which alleged the nullity of the mortgage. Said resolution reads in part as follows:

"The following resolutions were adopted:

"2. At this stage the meeting its president Walker proceeded to report to the board in regard to the steps taken for a settlement of the matter of Central Boca Chica of Santo Domingo pending before the courts and which settlement it is difficult to reach owing to the obstructions placed in its way by the Compañía Industrial y Comercial of Santo Domingo; and after mature deliberation by all

the members of said committee it has been resolved to settle with said company on the following terms:

"(1st) The Compañía Industrial y Comercial, instead of opposing the foreclosure proceedings, will help the bank by withdrawing its motions and joining the bank so as to expedite matters.

"(2nd) After the properties of the Central have been conveyed to the bank, two bond issues shall be made as follows:

"Bonds A up to the amount of $300,000, of which $200,000 shall be allotted to the bank in settlement of its claim and the remainder $100,000 to be sold to individuals or concerns the proceeds thereof to be used by the central in grinding the coming sugar crop (see below).

"Bonds B to the amount of $160,000 allotted to the bank and $112,000 to cover the claim of the Compañía Industrial y Comercial.

"From the sum of $360,000 in bonds A and B allotted to the bank Harry MacCormick shall receive a proportional part for his claim of $50,000 against Central Boca Chica secured by the same amount of the previous bonds.

"Both issues of bonds A and B shall mature in twelve years and shall bear interest at the rate of eight per cent annually.

"(3rd) A new corporation shall be organized with a central office in the city of San Juan with the power of inspection given to the bank to be exercised at any time.

"The committee commissions Mr. Walker to settle this business at the earliest moment on account of its urgency, and it was so recommended to the board.

"At the suggestion of the advisory member Mr. Monserrat the committee resolved to give a unanimous vote of thanks to Mr. Walker authorizing him to settle this business as he thinks best in all its details."

This resolution was adopted at the suggestion of M. A. Walker, acting president in the absence of Rafael Fabián, and fully authorized Walker to settle the matter. Practically he carried out the instructions, except that the corporation which succeeded the debtor Central and acquired all its properties was organized and incorporated under the laws of Santo Domingo. It seems that this was done on the advice of counsel representing the bank in Santo Domingo, but this did not affect the purpose of the bank to secure firmly its claim.

On the other hand, though Fabián appears as one of the directors of Central Boca Chica, nevertheless he was so in name, because the president of the corporation, Miguel Guerra Parra, really managed the Central and all of its affairs. There is nothing to show that the defendant attended any of the meetings of the board of directors or that he took part in their deliberations and resolutions. Also a significant and a very important fact is that from 1921 the financial condition of Central Boca Chica was very unsatisfactory. Although in the annual report of July 31, 1921, of the fourth financial year of the corporation, mention is made of its splendid financial situation, it is a fact that the Central lost money during that fiscal year. The causes are explained and they show that that condition was not brought about by mismanagement on the part of its directors. The report on pages 5 and 6 reads as follows:

"The great fall in the price of sugar in the present year so big in comparison with that in any other product in this country and later on the business depression, were the principal causes of the demoralization among the planters, and as a consequence thereof the amount of cane cut in a week was ground in a couple of days, and this state of things continued so long that at the end of the grinding season, on the 9th of July, more than fifteen thousand tons of cane were left uncut."

The demoralization among the planters seems to have continued in the 1921–1922 grinding season, and it was doubtless due to the insolvency of the corporation. It was without funds to pay the planters in cash for their sugar and they would come to the factory with baskets to get the sugar, crowding to get it as it came from the mill.

The crisis was aggravated by the lack of funds to pay the debts and meet the expenses required by a sugar mill to enable it to grind. It seems that finally the efforts made by the president of the corporation to negotiate a loan to meet the situation were not successful, and then came the foreclosure proceedings taken by the bank, the claims of

the Compañía Industrial de Santo Domingo by reason of some agricultural financing loan, attaching and carrying away launches and carts, and the claims from the creditors. The Central Boca Chica tried to resist the foreclosure proceedings instituted by the bank by attacking the validity of the mortgage, although the president of Central Boca Chica stated in the meeting of shareholders on October 5, 1922, that the opposition to the foreclosure proceedings instituted by the bank was rather for the purpose of delaying the action because there was ground therefor on its merits. Nevertheless, it was in this way that the other creditors arrived at the plan of reorganization referred to by the court below in its findings.

Appellants in any case want to make defendant liable for acts of omission in the performance of the duties of his office, alleging that the court below erred in dismissing the complaint in the absence of proof on the part of the defendant. It is not necessary for us to go into the legal aspect of that proposition. Appellants allege that after the facts had been proved as well as defendant's participation in the same, it was the defendant's duty to clear himself, to give explanations showing that he did all in his power to make things take a different course without prejudice to the appellants' interests. As the facts as alleged in the complaint have not been proved, and still less that the defendant had taken in any way any part therein, there is no ground for the conclusion which the appellants seek to maintain.

Appellants object to the imposition of costs, alleging that they were *bona fide* suitors even though they may not have had a cause of action. The court below, nevertheless, exercised its discretion in adjudging the costs against the plaintiffs and from a consideration of the case we see no grounds for a reversal of that part of the judgment.

The judgment appealed from must be affirmed.

Mr. Justice Hutchison took no part in the decision of this case.